AO 106 (Rev. 01/09) Application for a Search Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

David Washington
David Burgin
Torrance Bailey
Billy Henderson

**Case No. 20-M-211**

## APPLICATION FOR FOUR SEARCH WARRANTS

I, a federal law enforcement officer or an attorney for the government, request four search warrants and state under penalty of perjury that I have reason to believe that on the following persons or property *(identify the person or describe the property to be searched and give its location)*:

### David Washington, David Burgin, Torrance Bailey, and Billy Henderson

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
### DNA buccal samples

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of 18 U.S.C. §§ 924(c) and 21 U.S.C. §§ 841(a)(1), 846, and 856.

The application is based on these facts:

- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

THOMAS J. WEBB
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS
*Printed name and title*

Sworn to and signed telephonically.

Date:   December   17  , 2020

_____
*Judge's signature*

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

City and state:   Buffalo, New York

## AFFIDAVIT

STATE OF NEW YORK    )
COUNTY OF ERIE        )        SS:
CITY OF BUFFALO       )


**THOMAS J. WEBB,** being duly sworn, deposes and states:


1.      I am employed as a Special Agent ("SA") for the Department of Homeland
Security ("DHS"), Homeland Security Investigations ("HSI"), Immigration and Customs
Enforcement ("ICE").  I am currently assigned to the HSI Border Enforcement Security
Taskforce (BEST), which investigates drug trafficking and money laundering organizations
that operate in the United States and foreign countries with a nexus to the United States.  As
such, I am an investigator or law enforcement officer of the United States, within the meaning
of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct
investigations of, and to make arrests for, the offenses enumerated in Title 18, United States
Code, Section 2516.  Furthermore, per the Interagency Cooperation Agreement between the
Drug Enforcement Administration ("DEA") and ICE/HSI, I am a cross designated agent
authorized to investigate violations of Title 21, United States Code.


2.      During my law enforcement career, I have participated in numerous cases
involving the distribution of narcotics.  I have participated in successful investigations into
illicit drug distribution networks.  I am familiar with how controlled substances are obtained,

diluted, packaged, distributed, sold and used within the framework of drug trafficking and how drug traffickers use their persons and personal property to facilitate their illegal activities.

3.    This affidavit is being submitted in support of an application for four (4) search warrants authorizing a DNA buccal swab of **DAVID J. BURGIN**, **DAVID WASHINGTON**, **TORRANCE BAILEY** and **BILLY HENDERSON. BURGIN**, **WASHINGTON**, and **BAILEY** are currently charged in a 22-count Superseding Indictment (20-CR-29-A), for violations of various drug trafficking and firearms offenses, including Title 21, United States Code, Sections 841(a)(1), 846, and 856(a)(1); Title 18, United States Code, Sections 924(c)( l)(A)(i). **HENDERSON** is currently charged in a separate 5-count Indictment (19-CR-82A) for drug trafficking and firearms offenses, including Title 21, United States Code, Sections 841(a)(1), 846, 856(a)(1), and 858; Title 18 United States Code, Section 922(g)(1). This affidavit is being submitted for a limited purpose, that is, a probable cause determination, therefore I have not presented all the facts of this investigation to date.  I have set forth only the information I believe to be necessary to establish probable cause for a search warrant to search the persons of **DAVID J. BURGIN**, **DAVID WASHINGTON**, **TORRANCE BAILEY** and **BILLY HENDERSON** for evidence, namely DNA, to be collected from the inside of their cheeks using a method known as "buccal swabs."[1]

---

[1] The procedure involves swabbing the inside of the subject's cheeks with cotton swabs that resemble Q-tips in order to obtain epithelial cells that can then be analyzed for the subject's DNA.  Once that DNA is analyzed, it can used as the "known" or "known sample" to be compared with DNA found somewhere else, in this case, on three of the four firearms seized from 56 Grimes Street on February 19, 2020.

## PROBABLE CAUSE

## INVESTIGATION BACKGROUND

4.      HSI Buffalo along with the FBI Buffalo Division Safe Streets Task Force (FBI-SSTF), DEA Buffalo, ECSO and BPD are investigating the drug trafficking activities of a Transnational Criminal Organization (hereinafter, "TCO") operating between Mexico and the United States.  This investigation has revealed the TCO is moving bulk quantities of cocaine, heroin, and fentanyl into the Western New York area.  The investigation has also indicated that the organization likely conducts activity in Arizona, California, and Texas.  It is believed the TCO's Buffalo, New York-based cell is headed by **DAVID BURGIN** and **DAVID WASHINGTON**.  **BURGIN** and **WASHINGTON** use a network of distributors to sell narcotics within the Western District of New York to include trusted associates **BAILEY** and **HENDERSON** as well as many other individuals, known and unknown.

## PROBABLE CAUSE

**A.      February 19, 2020 Seizure of the Firearms**

5.      On February 19, 2020, members of the Erie County Sheriff's Office (ECSO) Narcotics Squad obtained search warrants for two residences in the City of Buffalo NY, two vehicles and one individual.  The search warrants were obtained by the ECSO and signed by Erie County Court Judge Kenneth F. Case.  The warrants each authorized law enforcement to search for evidence of narcotics trafficking, including evidence of the distribution of cocaine, a Schedule II controlled substance, and firearms.

6.      On February 19, 2020, at approximately 11:30 a.m., an ECSO marked unit conducted a traffic stop of the target subject operating one of the known vehicles.  The stop and subsequent search of the target resulted in the discovery of approximately a 1/2 ounce of cocaine and cocaine base on the target's person.  Members of the ECSO Narcotics Squad further executed the search warrants of the residences and additional vehicle.

7.      The first residential search warrant resulted in the seizure of: 1) two (2) handguns, 2) ammunition, 3) ammunition magazines, and 4) a quantity of marijuana.

8.      The second residential search warrant resulted in the seizure of: 1) four (4) loaded handguns, 2) approximately 1 ½ kilograms of suspected cocaine, 3) fifty (50) round ammunition magazine, 4) approximately $50,000.00 US currency, 5) scales, 6) packaging materials and 7) cutting agents for narcotics distribution.

9.      In a post-<u>Miranda</u> interview conducted at the ECSO Office, the target of the executed search warrants stated that the cocaine found in his possession and seized at his residence were supplied to him by **DAVID BURGIN** approximately 1 week prior**.**  The target stated that **BURGIN** utilizes his nephew, **RODNEY PIERCE**,[2] to deliver the cocaine.  The target provided telephone numbers for **BURGIN** and **PIERCE** and stated that he contacts **PIERCE** to place the order.

---

[2] It should be noted that this application does not seek the DNA sample of **RODNEY PIERCE** because he, on the advice of his attorney Barry Covert, Esq., consented to the collection of a sample on December 11, 2020.

10.     On this same date, the target expressed a willingness to cooperate and, at the direction of law enforcement, engaged in consensually monitored calls and text messages to **PIERCE** to arrange for delivery of one kilogram of cocaine; some of the calls were recorded and all of the texts were preserved.

11.     On February 19, 2020, at approximately 4:19 p.m. in a monitored and recorded conversation **PIERCE** agreed to meet at 5:30 p.m. to provide the target with a kilogram of cocaine.  At 4:32 p.m. **PIERCE** texted "Unc meet u at 6".  In another recorded and monitored conversation **PIERCE** advised the target to meet him at the AutoZone on Broadway in the City of Buffalo.  In anticipation of the meet members of law enforcement established surveillance in the vicinity of the AutoZone on Broadway.  A white Dodge Caravan bearing NY registration JNG 9815, occupied by an individual matching the description of **RODNEY PIERCE** and later identified as **PIERCE** was observed backed into a parking spot at the AutoZone.  At the time of the surveillance an unrelated marked Buffalo Police Patrol Unit was observed in the area of the AutoZone resulting in **PIERCE** departing the area.  Surveillance was maintained on **PIERCE** and **PIERCE** was observed parking in the area of 56 Grimes Street, Buffalo, NY.  **PIERCE** was further observed exiting the white Dodge Caravan with a black bag and entering 56 Grimes Street.  At 5:46 p.m. **PIERCE** texted "In route b there in ten mins," "Big cuh unc said 15 mins hold on one sec," "Waiting for him pull up on me one sec unc."  A short time later **PIERCE** was observed exiting 56 Grimes, getting in the Dodge Caravan and travelling to the AutoZone.  Law Enforcement converged on the Dodge Caravan and placed **PIERCE** in custody.  A subsequent search of the vehicle resulted

in the seizure of approximately 1.9 kilograms of suspected cocaine.  The cocaine was found in a black backpack located on the front seat of the Dodge Caravan.

12.     Shortly after **PIERCE** was placed in custody members of the investigative team returned to 56 Grimes and observed a white Toyota Tundra, bearing NY registration HEG 4699, and known to be operated by **DAVID BURGIN** parked on the street.  A short time later the Toyota Tundra departed Grimes.  The vehicle was travelling in the direction of the AutoZone on Broadway and pulled into a gas station located across the street from the AutoZone.  Law Enforcement approached the Tundra and asked the driver to step out.  The driver was identified as **DAVID BURGIN**.  **BURGIN** was asked where he was coming from and he stated "the gym."  He was asked if he was anywhere else and responded that he wanted a lawyer.

13.     On February 19, 2020, members of the Erie County Sheriff's Office (ECSO) Narcotics Squad obtained two search warrants for 56 Grimes Street, Buffalo, NY and 56 Grimes Street, Upper, Buffalo, New York.  The search warrants were obtained by the ECSO and signed by Erie County Court Judge Kenneth F. Case.

14.     The search warrants executed at 56 Grimes resulted in the seizure of: (1) two handguns; (2) one loaded assault rifle; (3) another assault rifle; (4) more than $260,000 in United States currency; (5) 1.969 kilograms of powder cocaine; (6) 45.54 grams of cocaine base; (7) approximately 17.5 lbs of suspected marijuana; (8) 100.02 grams of a mixture of fentanyl and acetyl fentanyl; (9) 2 narcotics presses; (10) a money counter; (11) two vacuum sealers; (12) two large containers of cutting agents for narcotics distribution; (13) packaging

materials; (14) books and records; (15) 11 computer hard drives; and (16) a DVR video recording system. The controlled substances were submitted to the Erie County Central Police Services Laboratory and confirmed to be of the type and amount alleged above.

**B.     DNA Results**

15.     The four seized firearms were submitted to the Erie County Central Police Services Forensic Laboratory for DNA analysis. On December 8, 2020, a DNA analysis report was completed (Lab No: 20-00898) with the following conclusions:

a.     Item 1 (a semi-automatic pistol) had "a mixture of DNA from two unknown individuals, including at least one male individual."

b.     Item 2 (a semi-automatic pistol) had "a mixture of DNA from three individuals, including at least one male individual…. A search of CODIS Local (Local DNA Databank) resulted in a moderate stringency match between the major DNA profile from the semi-automatic pistol (Item #2) from this case, and the DNA profile from the known buccal specimen from Edwin Garner….The DNA results for Item 2 are at least $1.46 \times 10^{16}$ (14.6 Quadrillion) times more likely if they originated from Edwin Garner and two unknown individuals rather than if they originated from three unknown individuals in the U.S. population. This analysis provides very strong scientific support for the proposition that Edwin Garner []is a contributor to the DNA profile obtained from Item 2.

c.     Item 3 (a semi-automatic pistol) had "[a]n insufficient amount of DNA…to allow for comparisons to be made [].

d.     Item 4 (a semi-automatic pistol) had "a mixture of DNA from three unknown individuals, including at least one male individual."

See Exhibit A, attached hereto.

**C.     Edwin Garner Homicide**

16.    On July 27, 2017, Edwin Garner was murdered at approximately 5:13 a.m. while inside 97 Detroit Street. Buffalo Police officers and detectives responded to an emergency call reporting a shooting. Upon their arrival, Garner was found deceased with multiple gun shot wounds. Several ballistics were recovered from the scene and analyzed by the Erie County Central Police Services Laboratory. To date, no suspect has been arrested or prosecuted for the homicide of Edwin Garner.

17.    I am informed that on December 11, 2020, Bert Pandolfino, Firearms Examiner IV at the Erie County Central Police Services Laboratory, reviewed the firearms examination reports for the firearms seized at 56 Grimes Street on February 19, 2020 and the items of ballistic evidence seized from Garner's homicide scene on July 27, 2017. Based on his review, he concluded that none of the firearms seized from 56 Grimes Street were used to kill Garner because none are the same caliber class as the ballistics recovered at the homicide scene.

### D.    Confidential Source Information

18.    An HSI Source of Information (hereinafter CS-12) has provided information to HSI Special Agents since August 2019 and is currently providing information in hopes of hopes of receiving judicial consideration.  CS-12 was charged with Conspiracy to Distribute Butryrl Fentanyl.

19.    The following is a summary of the information provided by CS-12[3] to the investigative team:

a.    In August 2019, CS-12 reported **BILLY HENDERSON** sells powder cocaine, crack, heroin, fentanyl, and pills. **HENDERSON's** source of supply (SOS) is his brother, **DAVID WASHINGTON**, a/k/a "Dirt", a/k/a "Dirty Dave", a/k/a "Wavy." CS-12 stated that **WASHINGTON** is the main guy. **WASHINGTON** only deals with select individuals, mostly family members for distribution. **WASHINGTON** provided **HENDERSON** with large quantities of narcotics and **HENDERSON** handled the street level distribution. CS-12 explained that **HEDNERSON** had two types of customers, users and people who can handle weight. CS-12 has been with **HENDERSON** when **HENDERSON** picked up five "bricks" (kilograms) of cocaine from **WASHINGTON**. CS-12 has observed **WASHINGTON** with as a many as 30 kilograms of cocaine and has observed **WASHINGTON** with 10 and 20 kilograms on multiple occasions.

b.    CS-12 has observed narcotics, guns, and money at a home **WASHINGTON** owns in Bennet Village Terrace. **WASHINGTON's** house on Ashley Street in the City of

---

[3] The number assigned to this confidential source is consistent with other legal process applications throughout this investigation. CS-12 has advised your Affiant and/or other law enforcement personnel that CS-12's information is based upon either personal observations or personal conversations either directly with the individuals involved or with other persons whom CS-12 knows to be closely associated with the individuals.  The information provided by CS-12 has been corroborated, to the extent possible, through independent investigation, information received independently and separately from other law enforcement agencies and information provided by other Confidential Sources.  CS-12's information has been found to be credible and reliable. None of the information provided to HSI by CS-12 has proven to be either false or misleading. CS-12 has the following criminal convictions: Unlawful Use of Credit Card (misdemeanor); Petit Larceny (misdemeanor).  Other arrests include violations for Harassment and Disorderly Conduct. CS-12 is currently charged with **BILLY HENDERSON** for federal violations of drug trafficking laws in the Western District of New York.

Buffalo is a "stash" location. **WASHINGTON** owns a bar on the corner of Bailey Avenue and Dingens Street in the City of Buffalo. It used to be Roy's Bar and CS-12 believes **WASHINGTON** keeps, narcotics, guns, and money there.

c.      CS-12 stated that **WASHINGTON** and **HENDERSON** used to keep a large number of guns at 50 Newton Street in the City of Buffalo. They stopped using 50 Newton Street after "Quino" was killed, later identified as the murder of Marquino Green.

d.      CS-12 stated that **WASHINGTON** directed the killing of "Blow" and "Quino."

e.      CS-12 stated that "Blow" was a drug distributor for **WASHINGTON**. BPD Homicide confirmed Edwin Garner a/k/a Blow was the victim of a homicide on July 27, 2019 at 97 Detroit Street, Buffalo, NY. CS-12 stated Garner was killed by Micus WASHINGTON over stolen narcotics and a female(s). On the day Garner was killed CS-12 was attending a BBQ with **HENDERSON** on Detroit Street in the immediate vicinity of 97 Detroit in the City of Buffalo. CS-12 departed the party and when CS-12 met with **HENDERSON** a short time later, **HENDERSON** and "Peanut" (known to law enforcement as WILLIAM FORD) told CS-12 that Garner was dead. Approximately on hour later, CS-12 observed Micus WASHINGTON handing **HENDERSON** a wrapped-up gun. **HENDERSON** then directed CS-12 to hide the gun in a hole in the backyard at 18 Newton Street. CS-12 stated that **HENDERSON** had used the same hole in the backyard at 18 Newton to store drugs. **WASHINGTON** and **HENDERSON** went to Garner's brother's house on Grey Street in the City of Buffalo to get additional guns. From Grey Street, they took the guns, (including the murder weapon) to **WASHINGTON's** after hours club at 56 Grimes Street in the City of Buffalo. CS-12 does not know the current location of the guns.

f.    On another occasion, **WASHINGTON** and **HENDERSON** had a conversation and **WASHINGTON** told **HENDERSON** "Quino's got to go." CS-12 stated that **WASHINGTON** wanted Green gone over a drug debt. Green sold a customer of **WASHINGTON's** "bunk" or fake drugs and Green kept the real product. On the night of the murder Green, **WASHINGTON**, **HENDERSON**, LAMARIO MILLS, and **BAILEY** went out. **HENDERSON** returned and told CS-12 that Green was dead. CS-12 believed this to mean that **WASHINGTON** took care of it, but CS-12 did not know who the shooter was. After Green's murder MILLS removed a large number of guns from 50 Newton Street in the City of Buffalo. CS-12 stated that **WASHINGTON** had killed people and claimed that's why **WASHINGTON** has the nickname "Dirty Dave," because **WASHINGTON** is willing do his own "dirt" in the street.

g.    One time after **WASHINGTON** and **HENDERSON's** sister's home was shot up, **WASHINGTON** and **HENDERSON** were dropped off near the Golden Nugget Bar on Fillmore Avenue and they began chasing an individual through a yard. **WASHINGTON** was shooting at the individual until **WASHINGTON's** gun malfunctioned. **WASHINGTON** told CS-12 that **WASHINGTON** knew he hit the individual.


20.    Based on this information, I believe there is probable cause to collect known DNA samples from **DAVID J. BURGIN**, **DAVID WASHINGTON**, **TORRANCE BAILEY** and **BILLY HENDERSON** to confirm or refute the presence of their DNA in the mixtures recovered from the firearms seized at 56 Grimes Street. CS-12's information demonstrates the manner by which **WASHINGTON** and **BURGIN's** drug trafficking organization uses, stores, moves, and shares firearms. I draw this conclusion from the

associations between each of these individuals, the fact that each is currently charged by indictment in related drug trafficking cases, and because analysis has already confirmed presence of the DNA of a homicide victim, who was a drug distributor and associate of **DAVID WASHINGTON**.

21.    A known buccal sample from the defendants, **DAVID J. BURGIN**, **DAVID WASHINGTON**, **TORRANCE BAILEY** and **BILLY HENDERSON**, is required so that the Erie County Central Police Services Laboratory can conduct further analysis on the DNA mixtures recovered on the firearms.  A known DNA sample from the defendants will allow the forensic biologist to conduct further analysis to determine whether there is a DNA match, or if the defendants are included or excluded as a contributor to the DNA profile and, if included, the degree of probability.  It should be noted that DNA samples were collected from **DAVID J. BURGIN**, **DAVID WASHINGTON**, **TORRANCE BAILEY** and **BILLY HENDERSON** using a "federal DNA kit" at the time of their arrest. I am informed by the Erie County Central Police Services Laboratory that their protocol prohibits analysis of "federal DNA kits" because they are not compatible with the laboratory's extraction method. Instead, the Erie County Central Police Services Laboratory requires a known sample be collected using a "state DNA kit" or even a cotton swab. Accordingly, additional known samples are required in order for the Erie County Central Police Service Laboratory to perform the comparison analysis in this investigation.

22.    **WHEREFORE**, based upon the foregoing, it is respectfully submitted there is probable cause to search **DAVID BURGIN**, **DAVID WASHINGTON**, **TORRANCE**

BAILEY, and BILLY HENDERSON to collect a sample of DNA from each of them for confirmatory and statistical analysis of his DNA profile to the DNA profile being developed from the firearms recovered at 56 Grimes Street.


THOMAS J. WEBB
Special Agent
Homeland Security Investigations


Sworn and subscribed to telephonically

me this **17Th** day of December 2020.

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

# ERIE COUNTY CENTRAL POLICE SERVICES FORENSIC LABORATORY
### 45 Elm Street Buffalo, NY 14203-2600
### Phone: (716) 858-7408 Fax: (716) 858-7426

## DNA ANALYSIS REPORT

### LAB NUMBER: 20-00898

**INVESTIGATING AGENCY:** Erie County Sheriff's Office
**CONTACT INFO:** 10 Delaware Avenue Buffalo, NY 14202
**CASE NO.:** 20-013392
**CASE NAMES:**    **Burgin, David  - Defendant**        **REFERENCE NO.:**
   **Pierce, Rodney  - Suspect**
   **Washington, David  - Suspect**
   **Garner, Edwin  - Suspect**
**DATE OF REPORT:** 12/8/2020              **INV. OFFICER:** McMahon

**Report Number 3**

Date of receipt of test item(s): 02/20/2020
Date(s) of performance of laboratory activity: 11/02/2020 – 11/24/2020

DNA was extracted from the items described below. It was amplified using the polymerase chain reaction (PCR) and typed using capillary electrophoresis at the following genetic loci: Amelogenin, D3S1358, D1S1656, D2S441, D10S1248, D13S317, Penta E, D16S539, D18S51, D2S1338, CSF1PO, Penta D, TH01, vWA, D21S11, D7S820, D5S818, TPOX, DYS391, D8S1179, D12S391, D19S433, FGA and D22S1045. The results of this analysis and those previously reported in CPS Lab #07-08578, are described below.

**Results/Opinions/Interpretations:**
Based on the PCR results, the DNA profile obtained from the semi-automatic pistol (Item #1) is a mixture of DNA from two unknown individuals, including at least one male individual. A one-time search of the laboratory's Local DNA Databank was performed on the DNA profile obtained from the semi-automatic pistol (Item #1). No matching DNA profiles were found. The DNA profile is not suitable for entry into CODIS (DNA Databank) because it does not meet the CODIS eligibility requirements.
   Edwin Garner (CPS Lab #07-08578, Item #4) is excluded as a contributor to the genetic material in this specimen.

The DNA profile obtained from the semi-automatic pistol (Item #2) is a mixture of DNA from three individuals, including at least one male individual. The major DNA profile is that of a male individual and was entered and searched in CODIS Local (Local DNA Databank) where regular searches will be performed. Notification will be issued if there is a hit in the database to a matching DNA profile or if the DNA profile is removed from CODIS at any time in the future. The DNA profile does not qualify for submission to the State and National DNA Databanks because it does not meet the CODIS eligibility requirements for these databanks.
   A search of CODIS Local (Local DNA Databank) resulted in a moderate stringency match between the major DNA profile from the semi-automatic pistol (Item #2) from this case, and the DNA profile from the known buccal specimen from Edwin Garner (Item #4) from CPS Lab #07-08578 (Buffalo Police Department CD #07-3390886). The DNA results for Item #2 are at least $1.46 \times 10^{16}$ (14.6 Quadrillion) times more likely if they originated from Edwin Garner and two unknown individuals rather than if they originated from three unknown individuals in the U.S. population. This analysis provides very strong scientific support for the proposition that Edwin Garner (CPS Lab #07-08578, Item #4) is a contributor to the DNA profile obtained from Item #2.

An insufficient amount of DNA was obtained from the extract of the semi-automatic pistol (Item #3) to allow for comparisons to be made to this item.

The DNA profile obtained from the semi-automatic pistol (Item #4) is a mixture of DNA from three unknown individuals, including at least one male individual. The DNA profile is not suitable for entry into CODIS (DNA Databank) because it does not meet the CODIS eligibility requirements.

Erie County Central Police Services Forensic Laboratory
Lab No.: 20-00898    Report No.: 3 Cont'd

Page 2 of 2

Edwin Garner (CPS Lab #07-08578, Item #4) is excluded as a contributor to the genetic material in this specimen. Known buccal specimens are required for further comparison, including any elimination samples, if applicable.

The swabs of the semi-automatic pistols (Items #1, #2, #3 and #4) were consumed during analysis. The DNA extracts will remain in laboratory custody.

The autosomal STR statistical calculations in this report were generated using STRmix software which calculates a fully continuous probabilistic likelihood ratio (LR). The most conservative LR was reported using a lower bound on the credible interval from individuals in the U.S. Caucasian, African American, and Hispanic population groups. The population allele frequencies were obtained from the NIST 1036 US Population Dataset.

| Likelihood Ratio | Qualitative Interpretation |
|---|---|
| ≥ 1,000,000 | Provides very strong support for $H_p$ over $H_d$ |
| 10,000 - 999,999 | Provides strong support for $H_p$ over $H_d$ |
| 100 - 9,999 | Provides moderate support for $H_p$ over $H_d$ |
| 2 - 99 | Provides limited support for $H_p$ over $H_d$ |
| 1 | Uninformative |
| < 1 | Exclusionary |

Qualitative Interpretation wording statements are derived from the Recommendations of the SWGDAM Ad Hoc Working Group on Genotyping Results Reported as Likelihood Ratios as approved by the Executive Board of SWGDAM on July 12, 2018.

I affirm that I conducted the analysis documented herein.
This report does not constitute the entire case record, which may include worksheets, images, analytical data, and other documents.
Report wording definitions can be found at: http://criminaljustice.ny.gov/forensic/labreportstandards.htm

CERTIFICATION: Pursuant to Criminal Procedure Law Sections 180.60(8) and 190.30(2), I certify that this copy is a true and accurate report concerning the results of tests and examinations which I, Victoria Williamson, public servant and Forensic Biologist II, conducted at the Erie County Central Police Services Forensic Laboratory as recorded in this Laboratory Case Number , Report # 3. I am aware that false statements made herein are punishable as a Class A Misdemeanor pursuant to Section 210.45 of the New York State Penal Law. Pursuant to State Technology Law §304(2) the use of an electronic signature shall have the same validity and effect as the use of a signature affixed by hand.

Victoria Williamson
Forensic Biologist II

Erie County Central Police Services Forensic Laboratory
45 Elm St.
Buffalo, New York 14203-9600
(716) 858-7409



# REQUEST FOR LABORATORY EXAMINATION

| SUBMITTING AGENCY: | DISTRICT/BUREAU: | CASE/CD NUMBER: |
|---|---|---|
| ECSO | | 20-013392 |
| INVESTIGATING OFFICER: | BUSINESS PHONE: | E-MAIL ADDRESS: |
| McMahon | | |
| CHARGES: | DATE/TIME OF OCCURRENCE: | PROSECUTOR: |
| Pending | 2/19/20  9:48 Pm | |

CHECK IF APPLICABLE:  ☐ Sale of controlled substance   ☐ Asset Forfeiture Case   ☐ Evidence Previously Submitted in this case

| DEFENDANT(S): (last name, first name) | Date of Birth: | VICTIM(S): last name, first name | Date of Birth: |
|---|---|---|---|
| Borden, David | | | |
| | | | |
| | | | |

| CPS Item #: | Agency Item #: | DESCRIPTION OF EVIDENCE | EXAMINE FOR: | ADDRESS & WHERE OBTAINED: |
|---|---|---|---|---|
| | 1 ✓ | Anderson Am 15 5.56 Cal SN 16126092 w/ Magazine w/ 1 Live Round | DNA | 52 Grimes |
| | 2 ✓ | Palmetto PA15 5.56 Cal SN LW280371 w/ Magazine | DNA | 56 Grimes |
| | 3 | Glock 21 45 APC Cal SN PVB261 w/ Magazine | DNA | 56 Grimes |
| | 4 | FN Five Seven 5.7 x 28 Cal SN 386113047 w/ 4 Magazines | DNA | 56 Grimes |

COMMENTS:

**DO NOT WRITE IN THE SHADED AREAS**

---

**THIS SIDE TO BE COMPLETED BY THE SUBMITTING OFFICER**

SUBMITTED BY: _____
SIGNATURE

PRINT NAME: McBrandt

LOCKER NO.: 12

DATE/TIME SUBMITTED: 2/19/20  11:58

By signing this form you acknowledge that the Laboratory will select the appropriate items to be analyzed and the methods of analysis.

Go to www.erie.gov/forensiclab for Laboratory information, guidelines and forms.

**THIS SIDE FOR LABORATORY USE ONLY**

RECEIVED: ☒ Sealed  15 Bags (items 6-15 placed in Boxes)
☐ Unsealed                    ☐ Not Inventoried
☐ Improper Seal
☒ Received with crossouts/write overs
DATE/TIME REC'D: 2/20/2020  0850
RECEIVED BY: John Lincoln

LAB NO.: CPS FSL  2000898

SUBMISSION #: I        PAGE #: 1 OF 3

RESUBMISSION ☐

DCPSL-5
Issued by: Michelli Schmitz

2994
Revision 4
Page 1 of 1

Erie County Central Police Services Forensic Laboratory
45 Elm St.
Buffalo, New York 14203-9600
(716) 858-7409



## ADDITIONAL EVIDENCE INVENTORY

SUBMITTING AGENCY: ECSO

CASE/CD NUMBER: 20-013392

| CPS Item #: | Agency Item #: | DESCRIPTION OF EVIDENCE: | EXAMINE FOR: | WHERE OBTAINED: |
|---|---|---|---|---|
| | 5 ✓ | 2 MAGPUL MAGAZINES | DNA | 56 GRIMES |
| | 6 ✓ | MULTIPLE PLASTIC BAGS | CONTROLLED SUBSTANCE | 56 GRIMES |
| | | CONTAINING SUSPECTED | | |
| | | MARIJUANA W/ BLACK PLASTIC BAG | | |
| | 7 ✓ | CLEAR PLASTIC TUPPERWARE | | |
| | 7 | CONTAINER CONTAINING | CONTROLLED SUBSTANCE | 56 GRIMES |
| | | WHITE POWDER SUBSTANCE | | |
| | | AND CLEAR PLASTIC BAG | | |
| | | CONTAINING GRAY POWDER SUBSTANCE | | |
| | 8 ✓ | MULTIPLE PLASTIC BAGS CONTAINING | CONTROLLED SUBSTANCE | 56 GRIMES |
| | | WHITE ROCK LIKE SUBSTANCE | | |
| | 9 ✓ | WHITE TUPPERWARE CONTAINER | CONTROLLED SUBSTANCE | 56 GRIMES |
| | | CONTAINING WHITE POWDER SUBSTANCE | | |
| | 10 ✓ | BOX CONTAINING 2 PLASTIC | CONTROLLED SUBSTANCE | 56 GRIMES |
| | | BAGS CONTAINING MARIJUANA | | |
| | 11 ✓ | BLACK PLASTIC BAG CONTAINING | CONTROLLED SUBSTANCE | 56 GRIMES |
| | | MULTIPLE PLASTIC CONTAINERS | | |

COMMENTS: CONTAINING WHITE AND GRAY POWDER

**DO NOT WRITE
IN SHADED AREAS**

THIS SIDE TO BE COMPLETED BY THE SUBMITTING OFFICER

SUBMITTED BY: _____
                     SIGNATURE

PRINT NAME: MILBRAND

*This form must be accompanied by a "Request for Laboratory Examination Form" (DCPSL-5).*

Go to http://www.erie.gov/forensiclab for laboratory information, guidelines and forms.

THIS SIDE FOR LABORATORY USE ONLY

RECEIVED BY: _____

LAB. #:

2000898

SUBMISSION #: I    PAGE #: 2 OF: 3

DCPSL-6
Issued by: John P. Simich, Ph.D
Issue date: 08/13/2015

3679
Revision 1
Page 1 of 1

Erie County Central Police Services Forensic Laboratory
45 Elm St.
Buffalo, New York 14203-9600
(716) 858-7409



## ADDITIONAL EVIDENCE INVENTORY

SUBMITTING AGENCY: ECSO

CASE/CD NUMBER : 20-013392

| CPS Item #: | Agency Item #: | DESCRIPTION OF EVIDENCE: | EXAMINE FOR: | WHERE OBTAINED: |
|---|---|---|---|---|
| | 12 ✓ | BLACK CANVAS BAG CONTAINING CLEAR PLASTIC BAG CONTAINING BLACK PLASTIC WRAPPED SUSPECTED COCAINE LABELED "LAMBORGHINI" | CONTROLLED SUBSTANCE | 56 GRIMES |
| | 13 ✓ | BLACK ADIDAS BAG CONTAINING CLEAR PLASTIC BAG CONTAINING MULTIPLE CLEAR PLASTIC BAGS CONTAINING UNKNOWN SUBSTANCE | CONTROLLED SUBSTANCE | 56 GRIMES |
| | 14 ✓ | BLACK PLASTIC BAG CONTAINING MULTIPLE PACKAGING W/ RESIDUE | CONTROLLED SUBSTANCE | 56 GRIMES |
| | 15 ✓ | TAYLOR DIGITAL SCALE W/ RESIDUE | CONTROLLED SUBSTANCE | 56 GRAMS |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

COMMENTS:

**DO NOT WRITE
IN SHADED AREAS**

| THIS SIDE TO BE COMPLETED BY THE SUBMITTING OFFICER | THIS SIDE FOR LABORATORY USE ONLY |
|---|---|
| SUBMITTED BY: _____ <br> SIGNATURE <br> PRINT NAME: MILBRAND <br> **This form must be accompanied by a "Request for Laboratory Examination Form" (DCSPL-5).** <br> Go to http://www.erie.gov/forensiclab for laboratory information, guidelines and forms. | RECEIVED BY: John Lincoln <br> LAB. #: CPS 2000898 <br> SUBMISSION #: I    PAGE #: 3  OF: 3 |

DCPSL-6
Issued by: John P. Simich, Ph.D
Issue date: 08/13/2015

3679
Revision 1
Page 1 of 1

Erie County Central Police Services Forensic Laboratory
45 Elm St.
Buffalo, New York 14203-9600
(716) 858-7409



## REQUEST FOR LABORATORY EXAMINATION

| SUBMITTING AGENCY: | DISTRICT/BUREAU: | CASE/CD NUMBER: |
|---|---|---|
| ECSO | | 20-01 3392 |

| INVESTIGATING OFFICER: | BUSINESS PHONE: | E-MAIL ADDRESS: |
|---|---|---|
| Hediger | 716 667 5227 | Shaun. hediger @ erie. gov |

| CHARGES: | DATE/TIME OF OCCURRENCE: | PROSECUTOR: |
|---|---|---|
| | | U.S. Attorney |

CHECK IF APPLICABLE:  ☐ Sale of controlled substance   ☐ Asset Forfeiture Case   ☐ Evidence Previously Submitted in this case

| DEFENDANT(S): (last name, first name) | Date of Birth: | VICTIM(S): last name, first name | Date of Birth: |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| CPS Item #: | Agency Item #: | DESCRIPTION OF EVIDENCE: | EXAMINE FOR: | ADDRESS & WHERE OBTAINED: |
|---|---|---|---|---|
| | 1 | Sealed bag w/ rifle | DNA | |
| | 2 | Sealed bag w/ rifle | DNA | |
| | 3 | Sealed bag | DNA | |
| | 3.1 | Sealed bag | DNA | |
| | 3.2 | Sealed bag | DNA | |
| | 4 | Sealed bag | DNA | |
| | 4.1 | | DNA | |

COMMENTS: 4.2    * Resubmission *  as per U.S. Attorney    DNA

**DO NOT WRITE IN THE SHADED AREAS**

THIS SIDE TO BE COMPLETED BY THE SUBMITTING OFFICER

SUBMITTED BY: _SIGNATURE_

PRINT NAME: S. Hediger

LOCKER NO.: _____

DATE/TIME SUBMITTED: 10/22/2020   10:55 AM

By signing this form you acknowledge that the Laboratory will select the appropriate items to be analyzed and the methods of analysis.

Go to www.erie.gov/forensiclab for Laboratory information, guidelines and forms.

THIS SIDE FOR LABORATORY USE ONLY

RECEIVED: ☒ Sealed  4- sealed bags
☐ Unsealed _____  ☐ Not Inventoried
☐ Improper Seal _____
11/24/20  ☒ Received with cross outs/write overs
DATE/TIME REC'D: 10-22-2020   1055
RECEIVED BY: Dm Crowe
LAB NO.: 20-00898
SUBMISSION #: X    PAGE #: 1 OF 1
RESUBMISSION ☒

DCPSL-5
Issued by: Michelli Schmitz
Issue date: 01/12/18

2994
Revision 4
Page 1 of 1

## Erie County Central Police Services Forensic Laboratory



### Evidence Discrepancy Form

Laboratory # 20-00898                Officers: S. Hediger

                                     Agency: ECSO

Source of Discrepancy:

      ☒DCPSL-5          ☐Other:

Entry as submitted:
      Item 1 – Sealed bag w/ rifle
      Item 2 – Sealed bag w/ rifle
      Item 3 – Sealed bag
      Item 3.1 – (blank)
      Item 3.2 – (blank)
      Item 4 – Sealed bag
      Item 4.1 – (blank)
      Item 4.2 – (blank)
      (NOTE: Additional evidence was submitted that was not listed on the submission
      form)

Correct Entry:
      Item 1 –Rifle
      Item 2 –Rifle
      Item 3 – Handgun
      Item 3.1 – Cartridge magazine
      Item 3.2 – Test fired ammunition components
      Item 4 – Handgun
      Item 4.1 – Cartridge magazines
      Item 4.2 – Test fired ammunition components
      (NOTE: ALL resubmitted evidence should be listed on the CPS Lab submission
      form as it is listed on the CPS released receipt)

Discrepancy detected by: _Abigail Thompson_ Date: _10/23/2020_

   Witnessed by: _Jennifer L Cooney_ Date: _10/23/20_